**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**STEPHEN W. REESE,**

      **Petitioner,**          **CASE NO. 2:09-CV-188**
                           **JUDGE JAMES L. GRAHAM**
**v.**                    **MAGISTRATE JUDGE E.A. PRESTON DEAVERS**
**WARDEN, TRUMBULL
CORRECTIONAL INSTITUTION,**

      **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

      Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. It is further **RECOMMENDED** that Petitioner's request for an evidentiary hearing be **DENIED**.

**FACTS and PROCEDURAL HISTORY**

      The Ohio Seventh District Court of Appeals summarized the facts and procedural history of this case as follows:

> On April 3, 1999, Reese took part in sexual acts with his five year old niece. The State claimed that the victim witnessed her mother and father having sex and subsequently asked her "Uncle Stevie" what sex was about. The victim later told the authorities that she performed oral sex on Reese on that date. Reese gave a statement confirming that act did in fact take place.
>
> After the statement was given, police executed a search warrant on Reese's home and discovered over 300 pornographic tapes. One of the tapes contained footage of Reese committing numerous sexual offenses on his five year old niece. The acts included the victim performing oral sex on Reese, Reese touching the victim's vagina, and two separate orgasms by Reese. On the tape, the victim repeatedly asked Reese to please stop. Reese responded to these

requests by telling the victim that if she failed to cooperate he would tie her up like he did "last time."

 On August 8, 2001, Reese was indicted by the Grand Jury on eleven counts of rape in violation of R.C. 2907.02(A)(1)(b) with force specifications, two counts of pandering sexually oriented material involving a minor in violation of R.C. 2907.322(A)(1), six counts of sexual battery in violation of R.C. 2907.03(A)(5), five counts of gross sexual imposition in violation of R.C. 2907.05, two counts of child endangering in violation of R.C. 2919.22(B)(5), and lastly, two counts of sexual conduct involving a different victim in violation of R.C. 2907.04(A) and (B)(3).

Initially, Reese pled not guilty to all of these counts. The trial court then ordered a competency evaluation where it was determined by a clinical psychologist that Reese:

> "has an IQ of 74; he is not mentally retarded. His memory is grossly intact as measured by a highly reliable instrument; he has had no head trauma to suggest that he is any less impaired than five years ago. He has a driver's license, has children, and has had at least one long term relationship, has another girlfriend, and has been functioning sufficiently to avoid crimes and imprisonment up until now. All this suggests that he functions fairly well in society up until these charges were filed.

The clinical psychologist made multiple other findings that would only suggest that Reese understood the nature of the circumstances relating to his change of plea and subsequent sentencing. Thus, the trial court proceeded to conduct the appropriate Rule 11 colloquy at the subsequent change of plea hearing. Only after a thorough exchange took place between the trial court, counsel, and the accused, the court sentenced Reese to two consecutive life terms of imprisonment on counts one through eleven of the indictment, plus eight consecutive years of imprisonment on counts twelve through twenty seven. (Notably, the trial court could have sentenced Reese to a total of eleven life sentences plus ninety two additional years.)

*State v. Reese*, No. 07 JE 7, 2008 WL 852578, at *1-2 (Ohio App. 7th Dist. March 10, 2008).

Represented by new counsel, Petitioner appealed his convictions and sentence.  He raised the

following assignments of error:

> 1. Appellant received constitutionally ineffective assistance of counsel leading to an invalid plea.
>
> 2. Appellant was sentenced in violation of his Fifth Amendment right to due process of law and Sixth Amendment right to a jury trial.

*See id.* On March 10, 2008, the appellate court affirmed the trial court's judgment. *Id.* On August 6, 2008, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Reese*, 119 Ohio St.3d 1411 (2008).

Still represented by counsel, on March 12, 2009, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. In denying that the Petitioner was denied his right to the effective assistance of counsel, leading to an unknowing and involuntary plea, the decisions of the Ohio courts represented an unreasonable application of clearly established federal law, as well as an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.
>
> 2. In determining that the Petitioner was not sentenced in violation of the Fifth Amendment right to due process of law and his Sixth Amendment right to a jury trial, the decisions of the Ohio courts constituted a decision that was contrary to clearly established federal law.
>
> 3. The Petitioner is entitled to an evidentiary hearing on these matters.

In support of these claims, Petitioner has submitted his own affidavit, in which he indicates as in relevant part as follows:

> The facts stated in the petition and the Memorandum of Law, including those not reflected in the Record, are true to the best of his information and belief.

Specifically, the Petitioner swears and affirms as to the following matters not reflected in the record:

During the process leading up to my guilty plea, I really did not understand what I was agreeing to.  I certainly did not believe that, by agreeing to plead guilty, I was also essentially agreeing to a sentence of life imprisonment.

Based upon my conversations with my attorney, I believed that I did not have any choice except to plead guilty.  My attorney made me believe that pleading guilty would somehow benefit me.

Throughout the process leading to my guilty plea, my attorney did not appear to like me, and it was my impression that he did not want to represent me due to the charges that I was facing.  May [sic] attorney even yelled at me during the process leading up to my guilty plea, to the point where I would break down.

If I would have understood at the time that I was actually not gaining any benefit from pleading guilty, I never would have agreed to plead guilty.

Now, knowing that pleading guilty to the charges I was facing is basically an agreement to spend the longest possible time in prison, I would never agree to such a deal.  Instead, I would insist on going to trial so that I could at least have a chance to avoid such a sentence.

*Affidavit of Stephen W. Reese*.

It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit, and that no evidentiary hearing is required for resolution of Petitioner's claims.

## CLAIM ONE

In claim one, Petitioner asserts that his guilty plea was not knowing, intelligent or voluntary due to the ineffective assistance of counsel.  According to Petitioner, he felt he had no choice but to enter a guilty plea, and he did not understand he was agreeing to a life sentence.  Petitioner asserts that, had he understood the sentencing ramifications of his guilty plea, he would have not have pleaded guilty, but would instead have insisted on a jury trial.  He claims his attorney improperly

4

led him to believe there was some benefit to pleading guilty, and he was coerced into pleading guilty because he "was afraid of being misrepresented. . .  by an attorney who disliked him, yelled at him, and caused him to break down emotionally." *See Traverse*.  Additionally, Petitioner contends that he was unable to understand the nature of the charges against him, or the consequences of his guilty plea, rendering his guilty plea invalid.

The state appellate court rejected this claim as follows:

> Reese claims counsel was ineffective for failing to properly explain the nature of the proceedings to him and that counsel coerced him into taking a plea. Finally Reese claims that counsel failed to take into account his mental deficiencies.

> To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. *State v. Smith* (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128. Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. To establish prejudice, a defendant must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland* at 694. A reasonable probability must be a probability sufficient to undermine confidence in the outcome of the case. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. *Smith*.

> In *Hill v. Lockhart* (1985), 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203, the United States Supreme Court held that the *Strickland* two-prong "ineffective assistance of counsel test" applies in cases involving guilty pleas made as a result of alleged ineffective assistance of counsel. The court explained:

>> "Where a defendant enters a plea of guilty upon counsel's advice, the voluntariness of the plea depends

5

> on whether the advice was within the range of competence demanded of attorneys in criminal cases. The two-part standard adopted in *Strickland* for evaluating claims of ineffective assistance of counsel * * * applies to guilty plea challenges based on ineffective assistance of counsel. In order to satisfy the second, or 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203. See, also, *State v. Elliott* (1993), 86 Ohio App.3d 792, 621 N.E.2d 1272.

Here, Reese has failed to allege that he would have done anything but plead guilty to the charges. Because he has not established that he would have done anything differently had he been given effective assistance of counsel, he has failed to meet the prejudice requirement as described in *Hill.* Accordingly, this would be sufficient grounds to find his claim of ineffective assistance of counsel meritless.

Moreover, even if Reese could show prejudice, his claim fails for several other reasons. First, Reese claims that because he was learning disabled and developmentally handicapped, he could not comprehend the nature of the charges against him or the consequences of pleading guilty. However, his competency evaluation reveals that,

> "He does not suffer from a severe mental disease or defect, but does have severe behavioral problems.
>
> "It is the opinion of this Psychologist, with reasonable scientific certainty, that although the defendant suffers from depression and anxiety, he is aware of the nature of the charges against him. He is aware of the adversarial nature of the proceedings. He is able to adequately assist his attorney in his defense, and participate in a trial."

Reese further maintains that it is clear from the plea hearing transcript that he did not understand the charges against him. The following exchange took place on the record regarding Reese's plea:

> The Court: Okay Mr. Reese, did you hear all that?

6

Reese: Yeah.

The Court: And did you follow it all?

Reese: Yeah.

The Court: I know that Mr. McNamara has taken sometime to explain it to you. Has he explained it sufficiently that you understand it?

Reese: Yeah.

The Court: Okay. And you think you want to do that? You think you want to go through with this?

Reese: Yeah.

The Court: Okay. Before I allow you to do that, I have to go through some things with you. First, I have to tell you that you don't have to plead guilty. You could go to trial if you wanted to. Do you understand that?

Reese: Yeah.

The Court: But by your plea of guilty you're waiving or giving up whatever defenses you may have, you're admitting guilt and there won't even be a trial. Do you understand that?

Reese: Yeah.

The Court: I need to know that your new plea is being entered voluntarily. So, I'm going to ask you. Are you entering your new plea voluntarily?

Reese: Yes.

The Court: Has anyone promised you anything in order to get you to enter this plea other than what I've heard here in the courtroom this morning?

Reese: No.

The Court: Now, you understand that even though

7

there's an agreed recommendation of sentence in this case that I'm free to disregard that agreed recommendation of sentence and I could sentence you any way I want to consistent with the degrees of the-degrees of offenses that are presented here.

Reese: Yes, Your Honor.

The court then goes on to explain the possible sentences and punishments that could be imposed upon Reese. Reese demonstrates his understanding by asking questions of the court regarding his sexual predator status like whether he has to report to the sheriff of a county if he merely visits a county as opposed to moving to it. Reese also shows that he is following the court's explanation of the lifetime firearm disability by commenting that he doesn't "believe in those anyway." The portion of the transcript to which Reese specifically objects, however, is the following exchange regarding the nature of the charges:

The Court: Okay. Now, with respect to Counts One through Eleven, for there to be a-a conviction on those, a jury would have to be convinced beyond a reasonable doubt that you had sexual conduct, which I guess in this case is mostly intercourse, with a child under the age of 13 and you did it by force. Do you understand that?

Reese: Yea.

The Court: With respect to the pandering, what did you do that got you in trouble?

Reese: I don't know, made a videotape I guess.

The Court: Excuse me?

Reese: Made a videotape I guess.

The Court: Okay. It was a pornographic videotape?

Reese: Yeah.

The Court: That involved these-this 5 year old?

Reese: I guess, yeah.

The Court: Okay. And-and you understand that a jury would have to find those facts to be true beyond a reasonable doubt before they could convict you of those.

Reese: Yeah.

The Court: The sexual battery, Counts Fourteen through Nineteen, what did you do that got-those were part of the rapes.

Reese: I don't know. What's he talking about?

Counsel: If I may, Your Honor, is it all right if I respond?

The Court: Well, understand where I'm going here. It's important to me that he understands what a jury would have to be convinced of. So, I want to make sure he understands basically what the elements of these offenses are. Do you want to-

Counsel: Well, he understands that sexual battery is a lesser-included offense of rape, that it involves sexual conduct with a child, not unlike a rape charge. He understands that gross sexual imposition is also a lesser-included offense that is primarily a touching offense but the specific details of which elements make up which of the crimes or distinguish them, I don't believe Mr. Reese has a really clear understanding of and we have gone over them before. I don't believe he could define for you the elements of each but he does understand that they're also sexually-oriented offenses, that the gross sexual imposition involves primarily touching as opposed to oral or vaginal penetration like sexual battery and rape would involve. He also understands that every one of these allegations-every one of these counts involves an allegation that it is a child under 13 years of age and he understands that as to all of the rape charges there

9

is an allegation of threat of force.

The Court: Well, force or threat of force.

Counsel: Correct.

The Court: Do you understand that?

Reese: Yes.

Reese now claims on appeal that this exchange demonstrates that counsel failed to explain the nature of the charges to Reese. However, it appears that, although Reese may not have had a technical understanding of the charges, counsel explained the charges as best he could so that a layperson could understand them. Accordingly, it does not appear from the record that counsel was ineffective in rendering assistance regarding the plea.

Nevertheless, Reese argues that based upon several factors outside of the record, counsel was biased against Reese and therefore coerced him into pleading guilty. For example, Reese claims that counsel had a personal relationship with both the sheriff and judge. However, these types of accusations and claims are inappropriate for a direct appeal and therefore they should not be considered by this court. Thus, this assignment of error is meritless.

*State v. Reese*, 2008 WL 852578, at *2-5.

The factual findings of the state appellate court are presumed to be correct.  28 U.S.C. § 2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

10

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Court of Appeals for the Sixth Circuit recently summarized this standard:

> Under the "contrary to" provision, a federal habeas court should grant the writ "if the state court arrived at a conclusion 'opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'"*Boykin v. Webb,* 541 F.3d 638, 642 (6th Cir.2008) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable applications" clause, a habeas court may grant the writ if the state court identified the correct legal principle from the Supreme Court's decisions but unreasonably applied that principle to the petitioner's case. *Id.*

*Raver v. Brunsman,* No. 08-3098, 2010 WL 2545489, 381 Fed. Appx. 558, 561 (6th Cir. June 21, 2010).  This Court is not persuaded that Petitioner has met this standard here.

As a preliminary matter, to the extent that Petitioner supports his claim with facts not known or reviewed by the state courts, and asserts that these facts establish that his guilty plea was not knowing, intelligent and voluntary, or seeks an evidentiary hearing to further develop such off-the-record facts that have not been presented to or considered by the state appellate court, Petitioner failed to fairly present these allegations to the state courts.  This off-the-record claim, therefore, cannot be considered in these habeas proceedings.

The United States Supreme Court has "made clear that whether a state court's decision was

unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004). Additionally, 28 U.S.C. § 2254 (e) (2) limits a federal habeas court's ability to permit factual development. That section provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (A) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In *Holland,* the Supreme Court held that the restrictions on factual development set forth in § 2254(e)(2) apply when a petitioner seeks to present new evidence not considered by the state courts, whether he or she seeks to present that new evidence through an evidentiary hearing or expansion of the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases.[1] 542 U.S. at 653. The statute applies where a prisoner has 'failed to develop the factual

---

[1] Rule 7 of the Rules Governing Habeas Corpus Cases provides:

(a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.

(b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be

basis of a claim in State court proceedings.' " *Williams v. Taylor,* 529 U.S. 420, 430 (2000) (quoting § 2254(e)(2)). "If the prisoner failed to develop the facts, an evidentiary hearing cannot be granted unless the prisoner's case meets the other conditions of § 2254(e)(2)." *Id.*

Thus, when a petitioner seeks to develop facts in an evidentiary hearing that the state courts did not consider and attempts to have a federal court consider constitutional claims in light of those new facts, the petitioner must demonstrate that he or she was not at fault for the failure to develop the facts underlying the claims. A petitioner is at fault for the failure to develop the facts if he or she failed, based on the evidence that was available, to exercise due diligence in developing and presenting that evidence. *Id.* at 432. Generally, a petitioner exercises due diligence if he or she requests an evidentiary hearing in the state courts in accordance with state law. *Id.* at 437; *see also Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir.2001) (holding that the petitioner satisfied the diligence requirement by raising his claim in the appropriate forum and requesting a hearing that was never afforded by the state courts); *Jackson v. Anderson,* 141 F.Supp.2d 811, 828 (N.D. Ohio 2001) ("The Petitioner sought an evidentiary hearing in state court, which was denied, and thereby satisfied the diligence requirement of § 2254(e)(2).")

Here, Petitioner cannot establish that he exercised due diligence in presenting his off-the-allegations to the state courts. The state appellate court explicitly refused to consider his off-the-record arguments, noting that such claims had not been properly raised on direct appeal. In Ohio,

submitted and considered as part of the record.

(c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

13

off-the-record claims are properly raised in post conviction proceedings, and not on direct appeal.

*See* O.R.C. § 2953.21.[2]  However, Petitioner did not pursue a timely post conviction petition, and

---

[2]  O.R.C. § 2953.21 provides in pertinent part:

(A)(1) Any person who has been convicted of a criminal offense. . . and who claims that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

***

(C) The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

***

(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending. If the court notifies the parties that it has found grounds for granting relief, either party may request an appellate court in which a direct appeal of the judgment is pending to remand the pending case to the court.

***

(I) The remedy set forth in this section is the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case or the validity of an adjudication of a child as a delinquent child for the commission of an act that would be a criminal offense if committed by an adult or a related order of disposition.

the time period to do so has now long since expired. Further, nothing in the record suggests that Petitioner would be able to meet the stringent requirements for consideration of his claim in a delayed post-conviction petition. *See* O.R.C. § 2953.23.[3] Therefore, this Court cannot now consider Petitioner's off-the-record allegations made in support of his claim. Nor may the Court grant his request for an evidentiary hearing to further develop facts that he did not properly present to, and that were never considered, by the state courts in reviewing his claim. Therefore, Petitioner's request for an evidentiary hearing is **DENIED**.

This Court will address Petitioner's claim as it relates to facts that are readily apparent from the face of the record, and that were presented to the state courts. As to that claim, the record fails

---

[3] O.R.C. § 2953.23 provides in pertinent part:

(A) . . . [A] court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:

(1) Either of the following applies:

(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

to reflect that federal habeas corpus relief is warranted.

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary.  *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). The two part test announced in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Sparks v. Sowders,* 852 F.2d 882, 884 (6th Cir. 1988).  In order to obtain relief, a prisoner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884. Petitioner has failed to meet this standard here.

Contrary to Petitioner's allegations here, the record fails to support his contention that he did not understand the proceedings or ramifications of his guilty plea.  To the contrary, the September 24, 2001, competency evaluation indicates:

> It is the opinion of this Psychologist, with reasonable scientific certainty, that although the defendant suffers from depression and anxiety, he is aware of the nature of the charges presently pending against him.  He is aware of the adversarial nature of the proceedings. He is able to adequately assist his attorney in his defense, and participate in a trial.

*See Competency Evaluation, Exhibits to Petition*.

As detailed by the state appellate court, the transcript of Petitioner's hearing to accept his

guilty plea indicates that he repeatedly represented to the court that he understood the nature of the proceedings and charges against him, the terms of his negotiated guilty plea, and the sentencing ramifications, including that he would be serving life in prison.  *See Guilty Plea Transcript*, at 2-7. Petitioner was satisfied with his attorney.

> COURT: Let's talk about your attorney for a minute.  Has your attorney done all of the things that you've asked him to do so far?
>
> DEFENDANT: Yes.
>
> COURT: Is there anything that you would like for him to do or that you think ought to be done that's not yet done.... anything at all that you think he should have done but it isn't done yet?
>
> DEFENDANT: No.
>
> COURT: Is there anything that he's done that you wished he'd done differently?
>
> DEFENDANT: No.
>
> COURT: Is it fair to say that you're satisfied with your representation so far?
>
> DEFENDANT: Yes.
>
> COURT: Are there any questions you have about anything at all that we're doing here?
>
> DEFENDANT: No.
>
> COURT: You're sure?
>
> DEFENDANT: Positive.
>
> COURT: And its still your desire to go through with this plea bargain arrangement?
>
> DEFENDANT: Yes.
>
> ***

>COURT: Any questions that you have now that you've had a chance to think about what we're doing here?
>
>DEFENDANT: No.
>
>COURT: And you still want to go through with this?
>
>DEFENDANT: Yes.

*Id*. at 21-24.

Petitioner asserts that his attorney bullied and threatened him in an effort to force him to enter the plea agreement. A plea may be rendered involuntary as a result of threats. *Martin v. Kemp,* 760 F.2d 1244, 1247-48 (11th Cir.1985). To prove that his plea was not voluntary as a result of coercion, a criminal defendant must demonstrate that the fear of a greater penalty for not pleading guilty destroyed his ability to balance "the advantages of proceeding to trial against those of pleading guilty." *Jones v. Estelle,* 584 F.2d 687, 690 (5th Cir.1978). Petitioner has failed to meet this standard here.

>[T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. *Machibroda, supra,* 368 U.S. at 495-496, 82 S.Ct., at 514 (s 2255); *Price v. Johnston, supra,* at 334 U.S. 266, 286-287, 68 S.Ct. 1049, 1060-1061, 92 L.Ed. 1356 (s 2243).

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Such are the circumstances here.

Evidence against Petitioner was extremely strong and included videotapes in which he was identifiable, engaging in sexual acts with a young child. Therefore, it appears from the record that Petitioner had little to gain by proceeding to trial. Sheriff Abdalla summarized the facts as follows:

18

> First we interviewed a young female 5 years of age and she admitted
> to me that her Uncle Steve had sexually assaulted her and hurt her
> lots of times she said.  After receiving her statement, we brought in
> Mr. Reese and give him his *Miranda* and he admitted that he indeed
> had sex with her and it was on a tape of April 3rd of 1999.
>
> ***
>
> Stephen stated that [the victim] had saw her mom and dad having sex
> and she wanted to know what sex was about.... and he showed her
> what sex was about and on that particular day of April 3rd of 1999,
> she performed oral sex on him and using his term "he come on the
> floor."
>
> After receiving that statement from him and from the victim . . . I
> ordered my officers to prepare a search warrant for the home where
> he resides.  We recovered numerous, over 300, pornographic tapes.
> One of the tapes, when we come back, we played it, was a tape of Mr.
> Reese along with . . . [the victim].  On that tape there were numerous
> sexual offenses. . . .
>
> I might add that on both tapes... he continued to put his hands and rub
> her vagina and she continued to say, "Please don't."  She was crying
> "no, no, no" and he had continued to do it.  On the tape of [February]
> 18th, 1999
>
> ***
>
> Numerous times he would touch her or ask her to perform oral sex or
> ask her to spread her legs and she would beg him not to and she
> would cry and on two different occasions on that tape he told her if
> she didn't, he would tie her up like he did before.

*Guilty Plea Transcript*, at 26-28.  In response to this statement of facts, defense counsel indicated

that the details he disputed were "not terribly significant or relevant" as it related to Petitioner's

guilty plea.  *Id*. at 28.

> There is no question but that there was a rape and that there was
> illegal conduct that occurred and that there is a sufficient factual basis
> to justify the Court in accepting Mr. Reese's plea to this indictment,
> making a finding of guilty on each count and approving the jointly
> recommended sentence.

19

**

> I believe that his plea is voluntarily and intelligently made and that
> the joint recommendation of two life sentences and an additional 8
> years of mandatory time that actually would be served first is
> appropriate and reasonable for the behavior that is involved.

*Id.* at 30-31.  Petitioner had nothing to add.  *Id.*

Petitioner asserts that his agreement to life incarceration indicates that his guilty plea was not knowing, intelligent or voluntary.  This argument is not persuasive.  Petitioner's claim that he misunderstood the sentencing ramifications is simply incredible in view of the transcript of his guilty plea colloquy.  Further, his argument that the coercion by his attorney and Petitioner's low intelligence, or incompetence caused his guilty plea to be invalid is without support.

Claim one is without merit.

### CLAIM TWO

In claim two, Petitioner asserts that the trial court's imposition of consecutive maximum sentences pursuant to the joint recommendation of the parties violated *Blakely v. Washington*, 542 U.S. 296 (2004).  The state appellate court rejected this claim as follows:

> Reese challenges the sentence the trial court imposed upon him.
> However, R.C. 2953.08(D) prohibits Reese from making those
> arguments on appeal.
>
> In this case, Reese pled guilty to counts one through twenty-seven of
> the indictment. As part of that plea agreement, Reese agreed to a
> jointly recommended sentence and the trial court imposed the
> sentence jointly recommended by the parties. The jointly
> recommended sentences were within the statutory range.
>
> Pursuant to R.C. 2953.08(D), a defendant cannot appeal a sentence
> which "is authorized by law, has been recommended jointly by the
> defendant and the prosecution in the case, and is imposed by a
> sentencing judge." A sentence is authorized by law if it is within the

20

statutory range of available sentences. *State v. Gray,* 7th Dist. No. 02 BA 26, 2003-Ohio-805, at ¶ 10.

The Ohio Supreme Court's recent decision in *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-0856, does not change this rule of law. In *Foster,* the Ohio Supreme Court held that portions of Ohio's felony sentencing scheme were unconstitutional and severed those unconstitutional portions from the felony sentencing statutes. In doing so, the Ohio Supreme Court left the range of sentences authorized by law unchanged. Thus, any sentence imposed upon an offender within the statutory range remains a sentence authorized by law. This court has previously recognized this in *State v. Caporini,* 7th Dist. No. 05 JE 32, 2006-Ohio3095, and *State v. Byer,* 7th Dist. No. 05 CA 827, 2006-Ohio3093.

In this case, the sentence the trial court imposed fell within the statutory range and, therefore, was authorized by law. Since Reese's sentence was jointly recommended, authorized by law, and imposed by the trial court, he cannot appeal that sentence. Reese's second assignment of error is also meritless.

*State v. Reese,* 2008 WL 852578 at *5-6.  Again, the findings of the Ohio Court of Appeals are presumed to be correct.  This Court may not grant habeas corpus relief unless the appellate court's decision is contrary to or involved an unreasonable application of federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d), (e); *Williams v. Taylor*, 529 U.S. at 362.

Because the trial court imposed sentence pursuant to the joint agreement of the parties and under the terms of petitioner's negotiated guilty plea, Ohio law did not require the trial court to engage in any of *Blakely's* prohibited fact-finding prior to imposition of sentence. *State v. Porterfield*, 106 Ohio St.3d 5 (2006). This Court agrees with the reasoning of the United States Court of Appeals for the Southern District of Ohio, Western Division, on this point and concludes that Petitioner's sentence, therefore, did not violate *Blakely.  See Warren v. Warden,* No. 1:06cv534, 2008 WL 1732976, at *5-6 (S.D. Ohio April 10, 2008)(holding no *Blakely* violation occurs where

21

the petitioner is sentenced pursuant to his negotiated guilty plea and the joint agreement of the parties).  Moreover, Respondent correctly notes that the United States Supreme Court held, in *Oregon v. Ice*, 129 S.Ct. 711 (2009), that the Sixth Amendment does not prohibit judicial fact-finding prior to imposition of consecutive sentences.

Claim two is without merit.

## CONCLUSION

Because the undersigned finds no merit to either of Petitioner's claims, it is **RECOMMENDED** that his request for an evidentiary hearing be denied.  For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88

L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  s/  *Elizabeth  A.  Preston  Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge

Date:   January 10, 2011